<pre>
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                           21-CR-397(CBA)
 3   UNITED STATES OF AMERICA,
                                           United States Courthouse
 4            Plaintiff,                   Brooklyn, New York

 5            -against-                    August 2, 2022
                                           10:30 a.m.
 6   JASMINDER SINGH,

 7            Defendant.
     --------------------------------x

 8
                 TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
 9                 BEFORE THE HONORABLE CAROL B. AMON
                   UNITED STATES SENIOR DISTRICT JUDGE
10

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  MICHAEL GIBALDI, AUSA
                                     PATRICK J. CAMPBELL, AUSA
15                                   TANISH PAYNE, AUSA

16
     For the Defendant:         MEISTER SEELIG & FEIN LLP
17                              125 Park Avenue, 7th Floor
                                New York, New York 10017
18                              BY:  ILANA HARAMATI, ESQ.

19
     Court Reporter:            Georgette K. Betts, RPR, FCRR, CCR
20                              Phone:   (718)804-2777
                                Fax:     (718)804-2795
21                              Email:  Georgetteb25@gmail.com

22


23   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
24

25
</pre>

PROCEEDINGS

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.  This is United

3     States District Court, Eastern District of New York.  The

4     Honorable Carol Amon, presiding.

5              Criminal cause for sentencing on United States

6     versus Jasminder Singh, docket number 21-CR-397.

7              May I have the appearance for the government,

8     please, appearances for the government please.

9              MR. GIBALDI:  Good morning, your Honor.  For the

10    United States, Assistant U.S. Attorney Michael Gibaldi.  With

11    me at counsel table, my colleagues trial attorney P.J.

12    Campbell, Assistant U.S. Attorney Tanisha Payne, FBI Special

13    Agent Melonie Shen.  And also from the Probation Department,

14    we have Probation Officer Erica Vest.

15             THE COURT:  Good morning.

16             THE COURTROOM DEPUTY:  For the defendant.

17             MS. HARAMATI:  Good morning, your Honor.  Ilana

18    Haramati for Jasminder Singh, who is standing to my left.

19             THE COURT:  Please be seated.

20             THE COURTROOM DEPUTY:  Please be seated.

21             THE COURT:  I'm concerned because there appear to be

22    a lot of last minute loose ends in this case, so I want to

23    address all of the arguments today, but in light of these

24    loose ends I'm reluctant to actually proceed with the

25    sentencing because some of the issues I think may need to be

PROCEEDINGS

 1   resolved prior to the sentencing.  But let me just go over the

 2   papers that I have.

 3          I have a presentencing report, a PSR, an addendum to

 4   the report.  I have the basic sentencing letter on behalf of

 5   Jasminder Singh, which is dated July 22nd, and then the

 6   government's letter with regard to sentencing dated July 26th.

 7   Then there are a subsequent letter on Mr. Singh's behalf that

 8   was filed yesterday that deals with the question of

 9   forfeiture, and then in addition to all of that we have

10   Ms. Kaur's lawyer on the issue of forfeiture.

11          I take it Ms. Kaur and he are not present today to

12   talk about it.

13          THE COURTROOM DEPUTY:  She is, your Honor.  Not

14   counsel.

15          THE COURT:  But Mr. Sundaram is not.

16          MR. GIBALDI:  I don't see Mr. Sundaram in the

17   courtroom, no.

18          THE COURT:  Let me just see if we can eliminate a

19   couple of issues to begin with.

20          First of all, are there any other papers that I

21   should have other than the ones that I've articulated?

22          MS. HARAMATI:  No, your Honor.  Just for the record

23   that in addition to the 7/22 sentencing memorandum, there are

24   Exhibits A and B to that memo, which were filed earlier.

25          THE COURT:  Right.

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1          MS. HARAMATI:  But other than that, nothing further.

2          THE COURT:  Okay.

3          MR. GIBALDI:  And, your Honor, just from the

4   government's perspective, I think this may have been

5   encompassed when you referenced the government's July 26

6   letter, but there was the government's principal letter of

7   regarding sentencing and there was also the letter filed the

8   same day regarding forfeiture --

9          THE COURT:  Right.

10          MR. GIBALDI:  -- a proposed order of forfeiture.

11          THE COURT:  As I understand it, my memory such as it

12   is, was that the parties agreed that forfeiture was not an

13   issue that would go to the jury, that they agreed to have it

14   resolved by the Court.

15          MR. GIBALDI:  That's correct, your Honor.

16          THE COURT:  It's not clear to me what is being

17   challenged about the forfeiture order and whether we need to

18   have any hearing with regard to the forfeiture order.  And

19   then there is a separate issue, which is a civil issue,

20   Ms. Payne can probably address, but when you seek to forfeit

21   assets, the government follows a procedure generally in which

22   they notify claimants and we have hearings and all of that.  I

23   don't know that any of that has taken place.  I mean, because

24   apparently there are two prospective claimants both having

25   served at one time or the other as the wife of the defendant,

PROCEEDINGS

1    his co-defendant and now his current wife.

2            So how is all of that supposed to be done?

3            MR. GIBALDI:  Well, your Honor, I think Ms. Payne is

4    probably in the best position to explain that and sort of why

5    it's our position that this is just sort of requesting the

6    Preliminary Order of Forfeiture is what starts that process.

7    I think Ms. Payne can explain that.

8            THE COURT:  But is it the Preliminary Order of

9    Forfeiture, is that the order that gets attached to the J&C,

10   or should it be a final order of forfeiture which may be

11   entailed going through this process.

12           MS. PAYNE:  Your Honor, the Preliminary Order of

13   Forfeiture starts the process by which any third parties can

14   contest any property that is subject to forfeiture.  At the

15   time of the defendant's sentence, forfeiture must be announced

16   as part of the defendant's sentence and the forfeiture order,

17   whether it's a Preliminary Order of Forfeiture or whether it's

18   a final order of forfeiture, is final against the defendant.

19           So if the Preliminary Order of Forfeiture would be

20   final against the defendant, but would not be final against

21   any third parties, as set forth in the Preliminary Order of

22   Forfeiture, there is the procedure, and it sets out -- sets

23   forth the procedures for third parties to file claims and for

24   the possibility of any ancillary proceedings and a hearing, if

25   necessary, and also if hearings are not necessary and the

6

PROCEEDINGS

1    parties can negotiate and come to a settlement, then we would

2    do that within that time prior to a final order of forfeiture.

3    And when all of the third-party claimants and their claims

4    have been resolved, we would propose a final order of

5    forfeiture at that time.

6              THE COURT:  I see.

7              MS. PAYNE:  So the Preliminary Order of Forfeiture

8    can be attached to the judgment.  This would not prevent the

9    sentence from going forward.  This is our standard process and

10   we deal with claims all the time and the law has a mechanism

11   for us to deal with that.  So after the preliminary order is

12   entered against the defendant, that just allows us to go

13   forward with the process with third parties.

14             THE COURT:  Okay.  Then what objections then

15   Mrs. Kaur could file her claim for the car, which is what she

16   wishes to do, and then his current wife could file a claim

17   with regard to the home.  So what basis do you have to argue

18   that this forfeiture order should not be entered against the

19   defendant?  You don't represent his wife.

20             MS. HARAMATI:  That's true, I don't represent his

21   wife.  It was my understanding, and it's my experience just in

22   the plea context at least, the Preliminary Order of Forfeiture

23   is generally entered at the time of the plea and the Final

24   Order of Forfeiture is entered at the time of the conviction.

25   I was not aware of the procedure that Ms. Payne laid out and

PROCEEDINGS

1   so I would have to go back and look into it.  But I was of the

2   understanding at the time of sentencing the Court would have

3   to enter a final order of forfeiture, and so my proposal was a

4   money judgment in an amount I believe all parties agree to

5   what is the forfeitable proceeds that Mr. Singh obtained as a

6   result of the crime of conviction and so that would be

7   mechanism for obviating this entire discussion.  And so that

8   is my proposal to your Honor.

9             THE COURT:  What, that I only forfeit the money?

10            MS. HARAMATI:  No, your Honor, that you enter -- can

11   I take off my mask?

12            THE COURT:  Sure.

13            MS. HARAMATI:  That a final order of forfeiture be

14   entered as to the full amount of forfeitable proceeds which is

15   the 3 million 47,000 dollars -- the $47,602.22, which is the

16   amount of proceeds that Mr. Singh received that are traceable

17   to the bank fraud.

18            THE COURT:  Well, my question to you is, you're then

19   saying that I shouldn't enter an order which forfeits these

20   bank accounts and cars and things and his premises in support

21   of that.  You're saying I shouldn't sign that part of the

22   order.

23            MS. HARAMATI:  That's correct.

24            THE COURT:  Why?

25            MS. HARAMATI:  First of all, for the reasons I

PROCEEDINGS

1    raised in my letter that were just under discussion of the

2    additional innocent owners --

3            THE COURT:  But that's their claim in it.  It

4    doesn't mean that his interests in it shouldn't be forfeited.

5    What argument do you have that he has -- he personally has no

6    interest in any of these items?

7            MS. HARAMATI:  Look, I agree with what your Honor

8    just said.  I do not have a specific factual argument that

9    these proceeds are not traceable to the crime.  My problem

10    with the order itself is that I think the language in it,

11    although the government disagrees with this based on what

12    their reading of paragraph 1, I think that the whereas clause

13    on page 1 and page 2 makes it at least arguable that there's

14    double -- a possibility for double forfeiture because, as I

15    laid out in my letter, the whereas paragraph states that the

16    defendant must forfeit the amount of $3,047,602.22, in

17    addition to the forfeiture of all right and title and interest

18    in the following specific assets.  And so although I think

19    from my discussions with the government they believe that the

20    line on paragraph 1 on page 2 that says, forfeiture of the

21    subject assets shall be credited towards the forfeiture money

22    judgment, I still think that that initial paragraph, the way

23    that it is presently drafted, makes it appear as if Mr. Singh

24    is actually subject to forfeiture far exceeding the 3 million

25    and change that's traceable to the bank fraud conviction.

9

PROCEEDINGS

1          MS. PAYNE:  Your Honor, may I address that?

2          THE COURT:  Yes.

3          MS. PAYNE:  The language in the Preliminary Order of

4   Forfeiture is the standard language we use in every case.  The

5   government is not attempting to double collect from the

6   defendant.  The maximum financial penalty that the defendant

7   would be subjected to is the amount of the forfeiture money

8   judgment, the $3,047,602.

9              The listed specific assets would be credited to that

10  amount and that's made clear in paragraph 1 of the order and

11  also in the government's motion in support of the order that

12  these assets would be credited to the forfeiture money

13  judgment amount.

14             THE COURT:  The fact that you always do it doesn't

15  mean it's correct.

16             Why do you have that language?

17             MS. PAYNE:  Because there are times -- so the

18  government seeks the entry of a forfeiture money judgment,

19  which the government is entitled to as an amount that the

20  defendant obtained from the scheme, but where the government's

21  specifies specific assets, Rule 32.2 allows us to also seek

22  those assets that we've traced to the proceeds and in order to

23  avoid the double counting of forfeiting specific assets, we

24  put into the order that the assets will be credited to that

25  forfeiture money judgment, so...

PROCEEDINGS

1          THE COURT:  Yes, I don't see the point of redoing

2     the forfeiture order.  It is clear from paragraph 1 that

3     there's not going to be a double recovery.  But tell me once

4     again, Ms. Payne, because I may have missed it, the Court --

5     what gets appended to the judgment, this preliminary order?

6          MS. PAYNE:  Yes, this Preliminary Order of

7     Forfeiture.

8          THE COURT:  Then once you have a Final Order of

9     Forfeiture, what happens with that?

10         MS. PAYNE:  That is filed with the Court.  It does

11    not have to be filed with the judgment, because the

12    Preliminary Order of Forfeiture includes all of the terms

13    that -- the terms and the property that the defendant is

14    forfeiting.  So whether it's a Preliminary Order of Forfeiture

15    or a Final Order of Forfeiture, whichever mechanism -- in some

16    cases there is only one order of forfeiture, so whatever

17    mechanism we use as it stands now the Preliminary Order of

18    Forfeiture would forfeit the defendant's rights in this case

19    but leaves open the rights of other third parties, so.

20         THE COURT:  I take it that to the extent that they

21    have claimants, that gets adjudicated before this Court?

22         MS. PAYNE:  Yes, your Honor, in a criminal

23    forfeiture ancillary proceeding where the claimants can file a

24    petition, a claim, a letter such as what has been filed, you

25    know, and the rule sets forth what each claimant has to show

PROCEEDINGS

1   and that's also set forth in the Preliminary Order of

2   Forfeiture with instructions as to what needs to be in the

3   petition.

4           THE COURT:  So, you now know at least two people --

5           MS. PAYNE:  Yes.

6           THE COURT:  -- that this needs to be served on now?

7           MS. PAYNE:  Yes.

8           THE COURT:  So this order --

9           MS. PAYNE:  This order would direct the government

10  to start that process as to the third parties.

11          THE COURT:  Well, under paragraph 4 you now know two

12  people who have expressed an interest, so you would have to

13  file that order and will file that order on those two

14  individuals.

15          MS. PAYNE:  Yes, your Honor, we would provide notice

16  to them as well as the usual public notice.

17          THE COURT:  Is there anything else that,

18  understanding that I need to address short of that procedure

19  being instituted?

20          MS. HARAMATI:  With respect to forfeiture?

21          THE COURT:  Yes.

22          MS. HARAMATI:  No, your Honor.

23          THE COURT:  Now, you talked about the forfeiture

24  being, it should be coextensive with Mandeep Singh.  Is there

25  a forfeiture order against Mandeep Singh?

PROCEEDINGS

1          MR. GIBALDI:  I think the defense counsel is

2    requesting restitution.

3          THE COURT:  I thought she also said it with regard

4    to the forfeiture.

5          MS. HARAMATI:  Your Honor, Mandeep Singh's

6    cooperation agreement specifically lists that he would be

7    required to pay forfeiture in the amount of these, I think

8    same assets, which I don't think he has an interest in, but to

9    the extent that he does and to the extent that he does pay

10   forfeiture of the, I think it's like $29,000 which is in the

11   same pot of money that was taken from American Express, that

12   should be credited as joint and several with Mr. Singh rather

13   than it being double counted.

14         THE COURT:  Is there a forfeiture order with regard

15   to Mr. Singh?

16         MR. GIBALDI:  He did agree to forfeit -- I mean, I

17   think Ms. Haramati is right that he didn't have any interest

18   but part of his cooperation agreement required him to forfeit

19   whatever interests he may have had in those particular assets,

20   as well as, I think it's $29,000, that he personally received

21   as part of the scheme so -- sorry, one moment, your Honor.

22         Right, and, your Honor, this 3 million -- the amount

23   of the forfeiture money judgment that the government is

24   seeking is the amount of money that this defendant received as

25   part of the scheme, which is why it's our position that the

PROCEEDINGS

1   defendant should forfeit that money.  I think, you know, what

2   Mandeep Singh has to forfeit is the amount that he separately

3   received and that will be taken up at his sentencing.  But

4   this is the amount.

5           THE COURT:  Is there a Preliminary Order of

6   Forfeiture with regard to Mr. Singh?  Do we have that, did you

7   file it?

8           MR. GIBALDI:  I think -- there will be.

9           THE COURT:  Pardon me?  There will be or there is?

10          MR. GIBALDI:  There will be one filed.  He hasn't

11  been sentenced yet --

12          THE COURT:  I know but --

13          MR. GIBALDI:  -- the government will be requesting

14  one.

15          THE COURT:  You usually do that ahead of time.  His

16  sentencing is supposedly Wednesday, right?

17          THE COURTROOM DEPUTY:  Tomorrow.

18          MR. GIBALDI:  That's correct.

19          THE COURT:  Are you filing --

20          MS. PAYNE:  We will file that right away, your

21  Honor.

22          THE COURT:  What are you going to seek that he

23  forfeit?

24          MS. PAYNE:  So as to Mandeep Singh, he would be

25  forfeiting the amount that he personally obtained, which is

PROCEEDINGS

1  the 29,000-dollar amount.  He's also forfeiting any right and

2  interest he might have in the property that's listed in the

3  defendant's order, which was identified as property -- as

4  proceeds of the scheme.  So any interest that he may have, he

5  will be forfeiting that interest.

6        MS. HARAMATI:  Your Honor, just to address the point

7  of who personally obtained what, I think that was pretty clear

8  from the evidence at trial that the flow of the money, that

9  3 million plus dollars came into certain bank accounts and

10  then some of it was distributed to Jasminder Singh and $29,000

11  was received by Mandeep Singh, but it's all that same one pot

12  of money.

13        And so under *United States versus Tanner* which

14  vacated, as cited in my papers on pages 28 and 29 of the

15  sentencing memorandum, the Second Circuit specifically held

16  that when you have a total amount of forfeiture that is

17  then -- a total amount of criminal proceeds that is then

18  distributed to a variety of defendants, but that the factual

19  amount is personally obtained by each defendant, the proper

20  procedure is not to have individual judgments for that full

21  amount against each defendant that then requires, effectively,

22  forfeiture of twice the amount of the criminal proceeds, but

23  that therefore joint and several up to the amount of the

24  proceeds that are received by Mandeep Singh would be the

25  appropriate thing to do.

PROCEEDINGS

1          THE COURT:  So I'm not understanding what you're

2    saying.  You're saying that there should be a forfeiture order

3    against Mandeep Singh for the entire amount as the forfeiture

4    order against your client.

5          MS. HARAMATI:  No, your Honor.  What I'm saying is

6    there is a forfeiture order of the entire amount as to

7    Jasminder Singh --

8          THE COURT:  Right.

9          MS. HARAMATI:  -- a portion of that the government

10   says, and I think there's evidence from trial, went to Mandeep

11   Singh and that total amount of $29,000.  So my request is that

12   the forfeiture judgment as to Jasminder Singh be joint and

13   several with Mandeep up to the amount of Mandeep's forfeiture.

14         THE COURT:  And does this *Tanner* case talk about

15   joint and several liability for forfeiture orders?

16         I've never heard of that, that's why.

17         MS. HARAMATI:  I think it's prior -- it does -- what

18   it does is it vacates forfeiture orders as to two individual

19   defendants, each of whom obtained a full amount of criminal

20   proceeds, 9 million something dollars in that case.  So it

21   went from -- in that case the full proceeds went from one

22   defendant's bank account to another defendant's bank account

23   making each of them liable for the full amount of forfeiture

24   and the Second Circuit specifically held that holding each

25   liable for that full amount of forfeiture and therefore

16

PROCEEDINGS

1   requiring forfeiture of twice the total amount of criminal

2   proceeds from the two defendants collectively was improper.

3   And so the remedy for that then would be joint and several

4   forfeiture orders up to the amount that both defendants

5   received, which in this case I think is the $29,000 that the

6   government is seeking from Mandeep Singh and any interest he

7   has in these itemized assets.

8           THE COURT:  So what are you proposing, what language

9   would you propose be in the Preliminary Order of Forfeiture

10  with regard to your client?

11          MS. HARAMATI:  That Jasminder Singh's -- the

12  forfeiture order as to Jasminder Singh be joint and several

13  with Mandeep Singh up to the amount of the 29,000-dollar and

14  change and the specific assets that Mandeep Singh is required

15  to forfeit.

16          THE COURT:  What is the government's position with

17  respect to that?

18          MS. PAYNE:  Your Honor, the law is clear that that

19  type of joint and several liability for forfeiture is contrary

20  to the law.  The forfeiture money judgment amount must be what

21  each defendant personally obtained from the scheme.  The

22  government's figure of $3,047,602 as to Jasminder Singh is

23  what the defendant obtained and retained and does not include

24  the $29,000 that Mandeep Singh --

25          THE COURT:  It doesn't include the 29,000?

17

PROCEEDINGS

1          MS. PAYNE:  It does not.  It is a lesser subset

2   and --

3          THE COURT:  So you excluded the 29,000?

4          MS. PAYNE:  That's correct.

5          THE COURT:  Oh.  Well, that's --

6          MS. HARAMATI:  That was not clear from the papers.

7   If that's the case, then I do withdraw my application although

8   I haven't checked the arithmetic.  And this would be a

9   preliminary order if I could write the Court to revise it

10  prior to the Final Order of Forfeiture being entered to the

11  extent the $29,000 isn't actually excluded.

12         THE COURT:  So you're not arguing with each other

13  about this, you're just -- the government's position is we

14  already subtracted it, presumably, they're going to have a

15  29,000-dollar forfeiture order against -- can you show -- I

16  mean, you must have had some basis for understanding the

17  original figure in the order, correct, Ms. Haramati?

18         MS. HARAMATI:  Yes, I looked at this number and I

19  just did the arithmetic myself of how much money I traced into

20  Mr. Singh's bank account and this does look like that full

21  amount that I didn't see the subtraction of the $29,000 based

22  on my own arithmetic, but I could be wrong and I assume it's

23  in the government's paper.

24         THE COURT:  Why doesn't the government provide a

25  supplemental letter to the Court indicating how they

PROCEEDINGS

1   calculated it, Ms. Payne, or so we can resolve that.

2            MS. PAYNE:  Yes, your Honor.

3            MR. GIBALDI:  And just so we're clear, in the terms

4   of -- we can provide a supplemental letter to clarify what the

5   actual numbers are, but in principle what the government

6   sought to do was essentially take the amount of money that the

7   defendant actually received in payments for the iPhones and

8   then subtracted -- and that was about $7 million, subtracted

9   the payments that he made to American Express and then the

10  balance is essentially what went to the defendant minus

11  $29,000 to Mandeep Singh.  That was the idea in terms of what

12  the government -- what this figure is supposed to represent.

13           THE COURT:  I don't think anybody ever made that

14  clear before right now, though.  I mean, I didn't understand

15  that.

16           MR. GIBALDI:  Well, I think that --

17           MS. HARAMATI:  I didn't understand that.

18           THE COURT:  It may say in your letter, I'm --

19           MR. GIBALDI:  So the letter did -- of forfeit said

20  Jasminder Singh received in his companies a total of

21  approximately $6.8 million, this is on page three of the

22  forfeiture letter.  And then it referenced that he paid less

23  than $4 million back to American Express and I think the exact

24  number is in the PSR.

25           THE COURT:  But where does it say that you gave him

PROCEEDINGS

1    credit for the money that went to --

2            MR. GIBALDI:  I think the 29,000 figure, you're

3    right, your Honor, is not -- that part is not clear from the

4    letter and so we can clarify that particular point, but that's

5    the basic idea of what -- how we arrived at that number.

6            THE COURT:  Okay.  Assuming that's proved to your

7    satisfaction then, we don't have issues with regard to the

8    forfeiture order, correct?

9            MS. HARAMATI:  That's right, your Honor.

10           THE COURT:  Okay.  Now let me -- so can the

11   government provide their calculations to the defense by the

12   end of the day tomorrow, can you do that?

13           MR. GIBALDI:  Yes, your Honor.

14           THE COURT:  Now, let me turn to restitution.

15   Mandeep Singh pled guilty to a conspiracy money laundering

16   count, right?

17           MR. GIBALDI:  That's correct, your Honor.

18           THE COURT:  Do you contend that Mandeep Singh owes

19   restitution to anyone?

20           MR. GIBALDI:  Your Honor, I think with the caveat

21   that obviously we're not at Mandeep Singh's sentencing, I

22   think based on the offense of conviction I don't think the

23   government intends to seek restitution from Mandeep Singh,

24   although I will also point out that I don't know that it

25   matters for purposes of Jasminder Singh, since I think we're

PROCEEDINGS

1    actually in agreement as to what the amount of restitution

2    should be.  There is this dispute about interest being applied

3    or not but we --

4           THE COURT:  There's also a dispute about whether, I

5    understood, it ought to be joint and several, right?

6           MS. HARAMATI:  That's right, your Honor.

7           THE COURT:  So that --

8           MR. GIBALDI:  Well, I guess we have no objection to

9    it being joint and several to whatever amount the Court

10   ultimately decides Mandeep Singh has to pay.  I don't think we

11   need to decide for today's purpose what Mandeep Singh needs to

12   pay in restitution.  I think we can --

13          THE COURT:  So you're not objecting to the --

14          MR. GIBALDI:  We have no objection to saying that

15   it's joint and several in whatever amount -- I think -- I

16   don't think it would be appropriate to order whatever that

17   amount is as to Mandeep Singh, since we're not at his

18   sentencing and his lawyers aren't here, but I think we have no

19   objection to saying that the restitution order entered as to

20   Jasminder Singh can be joint and several with whatever amount

21   Mandeep Singh has to pay.  In other words, we agree American

22   Express shouldn't get more than the $4.6 million that we've

23   identified as the amount of loss to American Express.  So we

24   have no objection --

25          THE COURT:  All right.  So is that issue resolved?

PROCEEDINGS

1          MS. HARAMATI:  It sounds like it, your Honor.

2          THE COURT:  Yes.

3          MR. GIBALDI:  Yes.

4          THE COURT:  As you say we can take this up with

5    regard to Mandeep Singh, but I'm not sure who the victim is in

6    a money laundering count.

7          MR. GIBALDI:  I think we can -- I think --

8          THE COURT:  But anyway.

9          MR. GIBALDI:  You're right, your Honor, but whether

10   it's zero or 4.6 million --

11         THE COURT:  Okay.

12         MR. GIBALDI:  -- it's joint and several and I think

13   that sort of solves the issue.

14         THE COURT:  Glad we had everyone get together today.

15         That's correct.  The next issue deals with

16   prejudgment interest on the restitution amount, and what is

17   the government's position on that?

18         MR. GIBALDI:  Your Honor, as set forth in our

19   principal sentencing letter, we think that prejudgment

20   interest would be appropriate here.  So we're starting from

21   the same figure of this 4.6 million, approximately, number.

22   And I think our position is set forth in the letter which is

23   that the Second Circuit has held prejudgment interest is

24   appropriate in a case like this.  We're not taking the

25   position that the interest should be the contractual interest,

PROCEEDINGS

1    since we agree with the defendant in so far as restitution is

2    not expectation damages, but we do think that it is

3    appropriate for the Court to award some sort of prejudgment

4    interest, and I think the reason is, as the Second Circuit has

5    recognized, there is -- if we're thinking about restitution as

6    a way to fully compensate American Express for the money that

7    it lost, it not only lost 4.6 million approximately, but we

8    need to take into account that it lost that money in 2018 and

9    so prejudgment interest simply allows or gives American

10   Express really the full value of what it lost since obviously

11   there is a time value of money.  American Express is certainly

12   in the business of lending money through credit card products

13   and other means, and so being deprived of the $4.6 million

14   starting in 2018, they were deprived of the ability to

15   continue to earn, you know, on that money.  So that's why we

16   think it is certainly appropriate here.

17           And the figure that we proposed -- this is something

18   that -- it's not settled in Second Circuit in terms of how you

19   compute the rate, but we did cite to this very recent case

20   from the Southern District of New York, U.S. versus Smerling,

21   which is basically calculating prejudgment interest the same

22   as post judgment interest, which is how we arrived at this

23   figure of 2.5.

24           THE COURT:  What is the post judgment interest rate

25   now?

PROCEEDINGS

1          MR. GIBALDI:  So I think it's -- you have to look at

2     it -- it's pegged to the weekly average of a one-year constant

3     maturity treasury yield.  So what we did was what sort of

4     followed what the Court did in *U.S. versus Smerling*, we went

5     to the Federal Reserve website, looked at what was posted --

6          THE COURT:  Was this for post judgment or

7     prejudgment?

8          MR. GIBALDI:  In *Smerling* the Court calculated

9     prejudgment interest by saying the best way to do this is just

10    follow the same procedure as the Courts do for post-judgment

11    interest.  And so what the Court did in *Smerling* was looked at

12    the rate that was posted for the weekly average for a one-year

13    constant maturity treasury yield for the calendar week that

14    preceded the first day that the defendant was liable for the

15    interest, so when the defendant first became liable.  So

16    that's essentially what we've done here.

17          We looked at when American Express closed the credit

18    card accounts, which was May of 2018, went to the Federal

19    Reserve website and looked at what that rate was posted for

20    the preceding calendar week and that's the 2.25 percent

21    interest.

22          THE COURT:  Ms. Haramati, you make -- what is your

23    argument as to why there should be no prejudgment interest,

24    and assuming I'm not persuaded by that, do you challenge the

25    2.25 percent figure?  Those are my two questions.

PROCEEDINGS

1          MS. HARAMATI:  I don't think that I challenge the

2    specific arithmetic the government is using to calculate, but

3    the argument that -- you know, the government's argument is

4    basically one that can be used in any fraud case with any

5    amount of loss.  But, you know, there's a pretty recent case

6    *United States versus Brown* from this district which in the

7    context of prejudgment interest addresses that it's only

8    appropriate where, quote, loss has prevented a victim from

9    putting its money to productive use.

10          Here, I understand that American Express is out that

11   money and there is a concept of time value of money, but there

12   is no proffer, no evidence, there's nothing on from the Court

13   can actually base that American Express would have used the

14   money that's in this loss figure to recover 2,

15   whatever percent that the government is proposing, and absent

16   that I think awarding prejudgment interest on the restitution

17   judgment would do exactly what the statute does not permit,

18   which is awarding a windfall to the victim.  Because

19   restitution is designed only to make the victim whole and not

20   to do anything further.

21          And just addressing briefly *United States versus*

22   *Smerling*, there is very little guidance in the Second Circuit

23   about when prejudgment interest is appropriate, although there

24   are cases that say it's at the Court's discretion and it can

25   be appropriate.  *United States versus Smerling*, as the

PROCEEDINGS

1  government pointed out, specifically looks at the

2  post-judgment interest statute in that case for calculating

3  the rate, but I think that also for determining whether

4  prejudgment interest is even appropriate because there's

5  specific guidance with respect to post-judgment interest, that

6  same evaluation would be appropriate in determining whether

7  prejudgment interest should be imposed.

8          THE COURT:  Are you contesting that there should be

9  post-judgment interest?

10          MS. HARAMATI:  I will contest that.  I will ask

11  under the factors under 18 U.S.C. 3612(f) that the Court waive

12  post judgment --

13          THE COURT:  Don't you need to do that now?

14          MS. HARAMATI:  I was planning on getting to that

15  after we discussed prejudgment interest.  I can address both

16  at once, because it is the set of factors that looks at,

17  essentially, the statute -- here's what the statute provides,

18  under 18 U.S.C. 3612(f), unless otherwise specified from the

19  Court, interest and restitution begins to accrue automatically

20  15 days after the entry of judgment, but the Court is

21  permitted to waive that requirement for post-judgment interest

22  or limit the length of the period during which interest

23  accrues upon a finding that the defendant does not have the

24  ability to pay interest.

25          I mean, here we've just spent the last half an hour

PROCEEDINGS

1    talking about the 4 million-dollar restitution judgment that

2    Mr. Singh is going to be subject to and the three plus million

3    dollar forfeiture judgment that he's going to be subject to.

4    I think there is no question based on the probation financial

5    disclosures and all of the available evidence, that Mr. Singh

6    does not have nearly as much money as he would need to fulfill

7    the financial penalties that are already going to be imposed

8    without prejudgment interest or post-judgment interest.  And

9    so I think under 3612(f) it is appropriate for the Court to

10   waive post-judgment interest and for similar reasons I think

11   prejudgment interest should also be -- should not be imposed

12   at the Court's discretion.

13        THE COURT:  Are both findings discretionary?  Does

14   the government agree both findings are discretionary?

15        MR. GIBALDI:  I certainly agree, your Honor, with

16   the prejudgment interest, while we've requested it, it's

17   something that the Second Circuit has held as within the

18   Court's discretion --

19        THE COURT:  Prejudgment interest?

20        MR. GIBALDI:  Prejudgment interest.  I'm looking at,

21   I think under Section 3612(f)(3) I think there needs to be a

22   finding by the Court, it says, if the Court determines that

23   the defendant does not have the ability to pay interest.

24   Under the subsection, then the Court has a few options, it can

25   waive the requirement to pay interest, limit the total

PROCEEDINGS

1    interest, or limit the length of the period during which

2    interest accrues.  So I think to the extent the Court makes

3    that finding that the defendant does not have the ability to

4    pay interest, then I think the Court does have certain

5    options.

6              THE COURT:  Why wouldn't that same finding just make

7    sense with regard to the Court's exercise of its discretion on

8    the prejudgment interest?  I mean, I take it the government

9    isn't interested in getting American Express to come in and

10   talk about what it would have done with the money, correct?

11             MR. GIBALDI:  No, your Honor, although I do think

12   that the Court is equipped to make a finding on the record

13   that -- based on the trial record that American Express being

14   in the business that it is and being a credit card issuer and

15   a bank, certainly puts its money to productive use and earns

16   interest on that money, that's how they make money.  I think

17   it's a separate question whether the Court intends to exercise

18   discretion to order interest to be applied.

19             I will say that just with respect to that point, and

20   one of other factor for the Court to consider is that,

21   obviously with respect to restitution, you know, the

22   government is really just advocating on behalf -- you know,

23   trying to get American Express what it lost and advocate for

24   American Express as the victim in this case.  I think that,

25   you know, to extent that the defendant is saying I'm going be

PROCEEDINGS

1  paying so much in forfeiture so I can't also pay American

2  Express sort of what it's otherwise due, I do think that that

3  is an unfair to the victim in a fraud case where, you know,

4  the victim is basically being told, you're not going to get

5  the full amount that you're otherwise due because the

6  defendant has a big forfeiture obligation as well.

7          THE COURT:  But there comes a point in time where

8  one has to address the practicalities of the situation when

9  we're talking about prejudgment interest and post-judgment

10 interest.  The argument here is not that I shouldn't order

11 restitution or I shouldn't order forfeiture, the question is

12 whether they should be enhanced by prejudgment interest and

13 post-judgment interest when, practically, the defendant is not

14 going to probably be able to pay either the forfeiture or the

15 restitution.  So it just becomes a situation of

16 practicalities.

17         MR. GIBALDI:  I understand that, your Honor, and

18 like I said, we do agree that ultimately, as I read the Second

19 Circuit's Qureshi case, I do think it's within the Court's

20 discretion.

21         THE COURT:  Well, I'll consider how I should

22 exercise my discretion in that regard.

23         MR. GIBALDI:  Your Honor, can I just come back --

24         THE COURT:  Sure.

25         MR. GIBALDI:  I'm sorry to come back to forfeiture

PROCEEDINGS

1    for one moment.  So I think Ms. Payne just had one more thing

2    she wanted to address.

3                THE COURT:  Sure.

4                MS. PAYNE:  Your Honor, there was a discussion

5    regarding the $29,000 that would be attributable to Mandeep

6    Singh.  I think for disclosure purposes I think the government

7    would propose that we reduce the amount, the 3,047,000-dollar

8    amount by $29,000 now rather than requiring additional filings

9    and having our agents have to go through the calculations

10   again and preparing --

11               THE COURT:  So you'll provide a new order to the

12   Court?

13               MS. PAYNE:  I think that that's appropriate.  We can

14   do that --

15               THE COURT:  Are you --

16               MS. PAYNE:  -- just so we can make it clear and

17   resolve it at this time.

18               THE COURT:  Okay.  Well, that's acceptable I take it

19   too.

20               MS. HARAMATI:  Yes, your Honor.

21               THE COURT:  Okay.

22               Let me see if we can clear up a couple of other

23   matters.  One deals with -- my understanding is that you're

24   not challenging -- are you challenging any factual material in

25   the presentence report?

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1          MS. HARAMATI:  No, your Honor.  I think all of the

2     factual corrections have been resolved.

3          THE COURT:  Okay.

4          MS. HARAMATI:  It's just the government's objection.

5          THE COURT:  Let me just ask, Mr. Singh, did you read

6     your presentence report and the addendum to that report?

7          THE DEFENDANT:  Well, yes, I did.

8          THE COURT:  Did you have an adequate opportunity to

9     discuss those issues with your counsel?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Are you satisfied to have her represent

12     you?

13          THE DEFENDANT:  I'm very satisfied she is

14     representing me, yes.

15          THE COURT:  Okay.  You should be.  She's done an

16     excellent and thorough job of representing you.

17          So let's take up, so the one guideline issue is the

18     two level increase.  Now, whether the two level increase would

19     come -- if the money laundering or the bank fraud, the result

20     would be the same; is that correct?

21          MS. HARAMATI:  Well, your Honor, on the two 1957

22     money laundering convictions, Mr. Singh I think the allegation

23     and the evidence was that he did those on his own.

24          THE COURT:  They weren't with Mandeep Singh?

25          MS. HARAMATI:  Mandeep Singh pled guilty to 1956,

PROCEEDINGS

1   concealment money laundering conspiracy of which Mr. Jasminder

2   Singh was acquitted.

3            THE COURT:  I understand that, but wasn't -- Mandeep

4   Singh admitted to the money laundering in connection with

5   facts that underlie one of the convictions for Jasminder Singh

6   or not.

7            MR. GIBALDI:  Well, part of his allocution was that

8   he agreed to commit money laundering with Jasminder Singh.  He

9   also did agree that he took -- so that $29,000 that we've been

10  talking about --

11           THE COURT:  Right.

12           MR. GIBALDI:  -- if your Honor recalls from trial,

13  was broken up in two checks.  There was a 20,000-dollar check

14  and a $9,000 check.  The $20,000 check, that's in excess of

15  $10,000, was the subject of one of the unlawful monetary

16  transactions offenses for which Jasminder Singh was convicted

17  under 1957.  But that was the 20,000-dollar check that he

18  wrote, that Jasminder gave to Mandeep Singh.

19           THE COURT:  So that's my point, your discussion of

20  what Mandeep Singh -- the government says that he was at least

21  an organizer, leader, manager or supervisor in any other

22  criminal activity and you base that in your sentencing letter

23  on his supervising Mandeep Singh, correct?

24           MR. GIBALDI:  Yes, your Honor.

25           THE COURT:  Now to the extent -- now Mandeep Singh

PROCEEDINGS

1  admitted to the conspiracy money laundering but money

2  laundering is what he admitted to, correct?

3          MR. GIBALDI:  That's correct.

4          THE COURT:  So that would, quite apart from the bank

5  fraud issue at paragraph 46, it would be a plus two, correct?

6  Is that the government's position?  I'm just not sure.

7          Is the government saying that based on their

8  allegations about Mandeep Singh that he is entitled to

9  organizer and leader of both the bank fraud and the money

10  laundering, or are you just arguing it with respect to money

11  laundering?

12          MR. GIBALDI:  Well, I think it's both, your Honor,

13  because I think that the guideline itself says that the Court

14  doesn't need to look just at the count of conviction, but

15  takes into account all relevant conduct and to whether this

16  enhancement applies.  So I think looking at it in terms of

17  sort of all relevant conduct and not just focusing on the

18  specific count of conviction, I think it's clear that the

19  enhancement should apply to both.  As a practical matter, I

20  don't know that it matters because the way the offenses are

21  then grouped since they are treated Count Seven and Eight

22  would be grouped with Count Two --

23          THE COURT:  That was my point.

24          MR. GIBALDI:  You still have -- whether Count Two is

25  a 25 and Count Seven and Eight are 27, or they are both 27,

PROCEEDINGS

1  checking with probation I think right, they are grouped

2  together, so I think it's still the adjusted offense level is

3  the same.

4          THE COURT:  Yes.

5          MS. HARAMATI:  Well, your Honor, I agree with that

6  last point that they are grouped and so if the plus two

7  applies to any of the counts it would effectively enhance

8  Mr. Singh's guidelines in the same fashion, but I'm arguing

9  that it doesn't apply to any --

10          THE COURT:  Why?

11          MS. HARAMATI:  -- counts of conviction.

12          Well, I understand that Mandeep Singh pled guilty

13  but the Court has the benefit of a full trial record with

14  Mandeep Singh's full trial testimony.

15          THE COURT:  Have you pointed out any part of his

16  trial testimony in your letter that undermines the fact that

17  he was led by Mr. Singh?

18          MS. HARAMATI:  I believe that I did but, you know, I

19  will just recap that for the Court now.

20          Mandeep Singh's conviction is this 29,000-dollar

21  payment that he moved from one bank account to another and for

22  him to -- under the law, under the *United States versus*

23  *Leonard*, which is the Second Circuit case that I cited in my

24  papers, if he is a non-criminal participant, meaning that he

25  did something that advanced the crime, but he himself was not

PROCEEDINGS

1  a knowing participant in the crime based on the evidence, then

2  that his participation would not be sufficient for this

3  two-point enhancement.

4            During trial Mandeep Singh told at least three

5  different stories with respect to what he understood he was

6  doing at the time that he moved that 20 plus thousand dollars.

7  He at one point said that Jasminder told him to, quote, pay a

8  large American Express bill first before transferring any

9  money to Jasminder, that's page 467 of the trial testimony --

10           THE COURT:  Is this in your letter on Mandeep?

11           MS. HARAMATI:  It is in my letter.  It is in my

12  letter.

13           THE COURT:  Where do you discuss this in your

14  letter?

15           MS. HARAMATI:  This is on pages three through five.

16  I might not have these specific trial cites, transcript cites

17  in here, but the argument is summarized in the same way.  But

18  I will provide some cites to Mandeep's trial testimony where

19  he gave a number of conflicting --

20           THE COURT:  Will you provide those cites to the

21  Court by the end of the day tomorrow?

22           MS. HARAMATI:  Yes.

23           THE COURT:  And quote the provisions that you're

24  relying on.

25           MS. HARAMATI:  Sure.

PROCEEDINGS

1          THE COURT:  You agree if I conclude that he was

2    admitting to criminal activity and he does say that it was

3    Mr. Singh who directed him to do it, if that's how I construe

4    his testimony, are you still challenging that the enhancement

5    is not appropriate?

6          MS. HARAMATI:  I would maintain my objections, but I

7    would understand that if the Court found that by a

8    preponderance that would be the appropriate finding under the

9    law.

10          THE COURT:  Thank you.

11          Is there anything else about the guidelines or any

12    other factual material in the report that you're challenging?

13          MS. HARAMATI:  Just one moment.

14          THE COURT:  Victor.

15          (Discussion off the record.)

16          MS. HARAMATI:  No, your Honor.

17          THE COURT:  Okay.  Thank you.  Let me ask another

18    question of the government with respect to the issue of

19    deportation.

20          A large portion of the argument made on behalf of

21    Mr. Singh is that he will be deported.  Are there immigration

22    proceedings ongoing now?  Will an immigration detainer be

23    filed against Mr. Singh?

24          MR. GIBALDI:  With respect to the first question,

25    your Honor, there is nothing pending to my knowledge, I'm

PROCEEDINGS

1    looking -- to the FBI's knowledge either.  As to your Honor's

2    question about whether an immigration retainer will be filed

3    in the future, I honestly can't say since I'm not --

4            THE COURT:  Who notifies immigration of the

5    conviction?

6            MR. GIBALDI:  But I think immigration will -- what I

7    can say is that the offenses of conviction would create

8    immigration issues for Mr. Singh, there is no doubt about

9    that.  And so I think that immigration, through Homeland

10   Security, could in the future on the basis of this conviction

11   initiate deportation or removal proceedings against Mr. Singh.

12   Like I said, I can confirm there is nothing pending as far as

13   I know and I'm just not in a position to say sort of if and

14   when they do that.

15           THE COURT:  How do these matters come to their

16   attention?

17           MR. GIBALDI:  I mean, what I can only say from

18   personal experience and looking at my colleagues, it's not

19   something that we bring to immigration's attention

20   affirmatively.  I can represent to you we're not in

21   communication with any immigration authorities with respect to

22   Jasminder Singh.  That doesn't mean that they -- to be clear,

23   it does not mean that immigration will not seek to deport

24   Jasminder Singh, but it's not something that we that results

25   from a conversation that we have, and, frankly, I don't know

PROCEEDINGS

1    exactly how they find out, because again it's not something

2    that I've ever had a conversation with anybody from

3    immigration about after, following a conviction.

4            THE COURT:  Do law enforcement authorities advise

5    immigration when people have been convicted?

6            You want to state your name for the record, please.

7    I guess she's not --

8            MR. GIBALDI:  The FBI does not, as a matter of

9    course, report convictions to the immigration authorities

10   following a conviction.  I can't answer that question other

11   than to say obviously --

12           THE COURT:  Why not?

13           MR. GIBALDI:  Because I don't represent Homeland

14   Security --

15           THE COURT:  I know why the government wouldn't

16   necessarily.

17           MS. HARAMATI:  Your Honor, if I may?

18           THE COURT:  It's crazy to me.  What is his

19   immigration status?

20           MS. HARAMATI:  Right now he has an application for a

21   green card pending.  He does not -- he's not a legal permanent

22   resident yet.

23           THE COURT:  Well, he can't be yet, what do you mean

24   yet?

25           MS. HARAMATI:  If something were to happen and he

PROCEEDINGS

1    were to have a very fantastic immigration lawyer who could

2    fight his case, I'm not an immigration specialist, but just to

3    address your Honor's questions to the government, I don't know

4    the internal mechanisms of the U.S. Government, but I can say

5    having represented a number of non-citizen defendants, that in

6    my experience once somebody goes into the Bureau of Prisons

7    systems, however it happens, it is almost automatic that there

8    is an immigration detainer that is put on that person before

9    they are released from the custody of the Bureau of Prisons,

10   and then there is removal proceedings.  How that exactly

11   happens I can't say, but in my experience that is -- in a

12   situation like this with an aggravated felony, that is

13   virtually automatic.

14           THE COURT:  Okay.  Victor.

15           Let me ask the government in terms of this organizer

16   and leader role is relying solely on Mandeep Singh, you're not

17   relying on the direction of Ms. Kaur?

18           MR. GIBALDI:  No, I think, your Honor, is

19   certainly -- I think we focused on Mandeep Singh since I think

20   it's a clearer case given that he has pleaded guilty to a

21   money laundering conspiracy and testified about moving money,

22   concealing money at Jasminder Singh's direction.  I do think

23   though that the Court could also conclude, even though

24   Rajpreet Kaur was acquitted because it's a preponderance

25   standard for the purposes of the guidelines calculation, that

PROCEEDINGS

1    she was also involved in the crime and directed by Jasminder

2    Singh to commit that crime.  I just don't think it's necessary

3    for the Court to make that finding given how Mandeep Singh

4    testified.

5           We do agree with the defense in so far as I think it

6    does have to be somebody involved in a crime --

7           THE COURT:  Excuse me a second.

8           So the government is not going to summarize the

9    evidence as you did with Mr. Singh that it was at his

10   direction of Ms. Kaur.

11          MR. GIBALDI:  I'm sorry, your Honor.

12          THE COURT:  The government doesn't intend to

13   summarize the evidence in the trial that showed his direction

14   of his co-defendant Ms. Kaur.

15          MR. GIBALDI:  We have relied on the record with

16   respect to Mandeep Singh and I think that's -- frankly, his

17   testimony is clear, we've cited the transcript in our

18   letter --

19          THE COURT:  All right, you're going to put in a

20   letter tomorrow indicating the cites that you're relying on.

21          MS. HARAMATI:  Yes, your Honor.

22          THE COURT:  And the government, if you have

23   objections to that, could respond the following day on

24   Thursday, okay?

25          MR. GIBALDI:  Yes, your Honor.

PROCEEDINGS

1          THE COURT:  Can the parties be here at 9 a.m. on

2    Friday?

3          MR. GIBALDI:  That works for the government.

4          MS. HARAMATI:  Of course, your Honor.

5          THE COURT:  Then I'll schedule the sentencing for 9

6    a.m. on Friday.  I think we've resolved the bulk of the

7    issues.  The only thing we're having additional submissions on

8    now --

9          THE COURTROOM DEPUTY:  I'm sorry, Judge, your

10   microphone is off.

11         THE COURT:  What's the problem?

12         THE COURTROOM DEPUTY:  You turned off your

13   microphone.

14         THE COURT:  Sorry.  The only thing that we're having

15   additional submissions on now that's necessary is the

16   citations you want to raise about Mandeep Singh in the

17   government's response.  I think we obviated other submissions

18   based on Ms. Payne's acknowledgment that she would have the

19   preliminary order redone, correct?

20         MS. PAYNE:  Yes, your Honor.

21         MR. GIBALDI:  Yes, so that there's a clear copy and

22   we can just submit a clean copy with that different amount of

23   the forfeiture money judgment.  We have a written out copy

24   here but we can submit a typed version.

25         THE COURT:  Is there anything else then that we need

PROCEEDINGS

1   to address, I don't think so.

2           MR. GIBALDI:  No, I think that takes care of

3   everything.

4           THE COURT:  Okay.  Thank you.

5           MS. HARAMATI:  Thank you.

6           MS. PAYNE:  Thank you.

7           (Matter concluded.)

8                   *    *    *    *    *

9   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

10

11  s/ Georgette K. Betts            February 12, 2023

12  GEORGETTE K. BETTS               DATE

13

14

15

16

17

18

19

20

21

22

23

24

25

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*