```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                              21-CR-397(CBA)
 3   UNITED STATES OF AMERICA,
                                              United States Courthouse
 4             Plaintiff,                     Brooklyn, New York

 5             -against-                      August 3, 2022
                                              10:30 a.m.
 6   MANDEEP SINGH,

 7             Defendant.
     --------------------------------x
 8
              TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
 9               BEFORE THE HONORABLE CAROL B. AMON
              UNITED STATES SENIOR DISTRICT JUDGE
10

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  MICHAEL GIBALDI, AUSA
                                   PATRICK J. CAMPBELL, AUSA
15
     For the Defendant:       GERSTMAN SCHWARTZ & MALITO, LLP
16                            1399 Franklin Avenue, Suite 200
                              Garden City, New York 11530
17                            BY:  DAVID M. SCHWARTZ, ESQ.

18   Also Present:            Erica Vest, U.S. Probation
                              Masuma Chagani, Punjabi interpreter,
19

20   Court Reporter:          Georgette K. Betts, RPR, FCRR, CCR
                              Phone:  (718)804-2777
21                            Fax:    (718)804-2795
                              Email:  Georgetteb25@gmail.com
22

23

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

2

PROCEEDINGS

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.

3          United States District Court for the Eastern

4   District of New York is now in session.  The Honorable Judge

5   Amon is now presiding.

6          Criminal cause for sentencing on United States

7   versus Mandeep Singh, docket number 21-CR-397.

8          Can I have the appearance for the government,

9   please.

10          MR. CAMPBELL:  Good morning, your Honor.  For the

11   United States, trial attorney Patrick J. Campbell.  Also

12   joined by Assistant United States Attorney Michael Gibaldi and

13   from probation, Erica Vest.

14          THE COURT:  Good morning.

15          THE COURTROOM DEPUTY:  For defendant.

16          MR. SCHWARTZ:  Good morning, your Honor.  David

17   Schwartz for Mandeep Singh.

18          THE COURT:  Good morning.

19          THE COURTROOM DEPUTY:  I also have a Punjabi

20   interpreter.  Can I have your appearance.

21          THE INTERPRETER:  Masuma Chagani.

22          THE COURTROOM DEPUTY:  Thank you.  Everyone please

23   be seated.

24          THE COURT:  All right.  Counsel, is there any legal

25   reason that we should not proceed with the sentencing of your

3

PROCEEDINGS

1    client today?

2            MR. SCHWARTZ:  No, your Honor.

3            THE COURT:  Have you seen I think the recently filed

4    order of forfeiture?

5            MR. SCHWARTZ:  Yes, we have.  The interpreter has --

6    we've discussed it extensively, but the interpreter is almost

7    done interpreting it for my client word for word, so...

8            THE COURT:  You want to wait?  How long is it going

9    to take her?

10           MR. SCHWARTZ:  Another 45 seconds, a minute.

11           THE COURT:  Yes.  Finish.

12           MR. SCHWARTZ:  Thank you, your Honor.

13           (Pause in proceedings.)

14           MR. SCHWARTZ:  The interpretation is done, your

15   Honor.

16           THE COURT:  I'm actually going to have my courtroom

17   deputy swear in this interpreter for the purposes of the

18   sentencing proceeding.

19           THE COURTROOM DEPUTY:  Can I ask you to stand and

20   raise your right hand.

21           (Interpreter sworn.)

22           THE INTERPRETER:  I do.

23           THE COURTROOM DEPUTY:  Can you also state the

24   language you're interpreting.

25           THE INTERPRETER:  Punjabi.

4

PROCEEDINGS

1              THE COURTROOM DEPUTY:  Thank you.

2              THE COURT:  First of all, I just want to assure

3   myself that I have all of the pertinent papers in the case.  I

4   have a presentence report, I have an addenda to the report.  I

5   have a sentencing submission on behalf of the defendant dated

6   July 25th.  A 5K motion and letter in support of the defendant

7   from the government dated July 18th, and then I, as well, have

8   a letter regarding the guideline range that I was copied on,

9   but it was a letter from the government to the Probation

10  Department and counsel as well challenging the guideline

11  calculation in the report.

12             Do the parties believe that there are any other

13  papers that I should have other than those which I've

14  mentioned from the government?

15             MR. CAMPBELL:  No, your Honor.

16             MR. SCHWARTZ:  No, your Honor.

17             THE COURT:  Okay.  Mr. Singh, was your presentence

18  report and the addenda to that report translated to you?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Did you have an adequate opportunity to

21  discuss the contents of that report with your attorney?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Are you satisfied to have him represent

24  you?

25             THE DEFENDANT:  Yes.

5

PROCEEDINGS

1              THE COURT:  Now, counsel, have you -- let me just

2    ask you, have you read the presentence report and discussed it

3    with your client?

4              MR. SCHWARTZ:  Yes.

5              THE COURT:  I know you challenge the guideline range

6    in the report, but is there a challenge to any of the other

7    factual information in the report?

8              MR. SCHWARTZ:  Just the guidelines -- the facts

9    which make up the guideline range.  Certainly the probation

10   report puts my client Mandeep Singh in with the entire

11   millions of dollars and certainly the government and I agree

12   that his involvement was only the 470,000.

13             THE COURT:  Well, that was essentially their

14   conclusion --

15             MR. SCHWARTZ:  Right.

16             THE COURT:  -- but I know you disagree with that

17   conclusion, but are there any facts stated here either about

18   his background or his role in the offense -- let me not call

19   it role in the offense.  What they described that he did in

20   connection with the offense, do you have a challenge to that?

21             MR. SCHWARTZ:  Certainly we've articulated, and I

22   think the trial corroborated his exact role in the offense.

23   He had a very minimum participation which they did not

24   acknowledge and his role in the offense, which is what came

25   out of trial, so we do dispute some of their conclusions and

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

6

PROCEEDINGS

1   their facts.

2            THE COURT:  Tell me what paragraph you're saying is

3   inaccurate.

4            MR. SCHWARTZ:  Certainly paragraph 17 is inaccurate.

5   The fact that Mandeep Singh spent a total of $7,317,000 is not

6   supported by any of the evidence in the case.

7            Certainly paragraph 20 is inaccurate.  Again, the

8   only evidence supports the 499,950, not the wires of

9   2,142,000.

10           THE COURT:  Well, that just says that Union

11  Logistics sent four wire transfers, it doesn't say he had

12  anything to do with it.

13           MR. SCHWARTZ:  I thought it was a little unclear the

14  way it was written.  I accept your interpretation of that for

15  sure.

16           THE COURT:  Anything else?

17           MR. SCHWARTZ:  The family data was accurate.

18           THE COURT:  Okay, he has one child, correct?

19           MR. SCHWARTZ:  Yes.

20           THE COURT:  Living in India?

21           MR. SCHWARTZ:  Yes.

22           THE DEFENDANT:  Yes.

23           THE COURT:  Does he have any contact with that

24  child?

25           MR. SCHWARTZ:  He does, but I'll let him --

7

PROCEEDINGS

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right, then let me just on the

3    guideline calculation, because the first thing the Court is

4    required to do procedurally is determine what in fact the

5    actual guideline range is.

6           The government, in your letter of July 18th the

7    government indicates that the loss issue should be

8    2B1.1(b)(1)(G), loss exceeding $250,000, correct?

9           MR. CAMPBELL:  Correct, your Honor.

10          THE COURT:  And that's based on his assistance in

11   transmitting the $455,000 out of the account so that American

12   Express couldn't receive that money as promised.

13          MR. CAMPBELL:  Correct, your Honor, and the fact

14   that it is the government's view, based on the trial, that the

15   remainder is not foreseeable to him.

16          THE COURT:  And you also believe he's a minor

17   participant in that activity, correct?

18          MR. CAMPBELL:  Correct, your Honor.

19          THE COURT:  So there is a guideline range, according

20   to the government, of 18 to 24 months.

21          Do you agree with that, counsel?

22          MR. SCHWARTZ:  Yes.

23          THE COURT:  Well, having sat through the trial and

24   considered the evidence, I think that a fair assessment of

25   what was foreseeable to Mandeep Singh is what the government

PROCEEDINGS

1    has alleged here, so I will adopt that guideline range of 18

2    to 24 months.

3              Do you want to be heard further, counsel, on behalf

4    of your client?

5              MR. SCHWARTZ:  Yes.

6              THE COURT:  Okay.  I mean, you have a very extensive

7    letter that you filed on his behalf --

8              MR. SCHWARTZ:  I did.

9              THE COURT:  -- which I, of course, read.  If you

10   want to add to that, you can.

11             MR. SCHWARTZ:  Just briefly.  We did file an

12   extensive letter, and the government certainly filed a very

13   positive letter towards Mandeep Singh, but just to highlight a

14   few things.

15             This is one case, your Honor, where, you know,

16   certainly I'm Mandeep's advocate.  And you hear advocates all

17   the time and usually the government is the adversary in a

18   case, but in this case, your Honor, you got to see his

19   testimony, his three days of testimony with your own two eyes

20   and your own ears so you were able to see him yourself.  So

21   any time an attorney gets up here and makes arguments, you

22   know that they're biased arguments because I'm here to defend

23   my client, but the beauty of this case is you got to see it

24   for yourself.

25             I'm hoping you agree with the defense and you agree

9

PROCEEDINGS

1   with the prosecution that Mandeep got up there, he told the

2   truth, he was honest, he was forthcoming, he was remorseful.

3   He was remorseful during his guilty plea to you and he was

4   remorseful up on the stand during the trial.

5           And as far as his cooperation goes, our letter

6   stated it, the government's letter stated it, but I don't know

7   what would have happened, you know, certainly they had their

8   case and it would have been a paper case, and who knows what

9   would have happened at the trial, but certainly his testimony

10  humanized this entire case for the government.  And he -- I

11  don't believe anyone could have asked for a better witness

12  than Mandeep Singh.

13          And you have his letters, I'm not going to go repeat

14  all the letters to you that -- but really those letters

15  support the Mandeep Singh that I've gotten to know.  A deeply

16  religious man, deeply religious.  He was volunteering for the

17  homeless and serving food way before he was arrested on this

18  case because that's who he is.  That's who he is as a human

19  being.  He came here to live the American dream, to work hard

20  and unfortunately he picked the wrong employer.  And he has

21  taken -- he has pled guilty, he has acknowledged his crime,

22  but certainly his crime occurred because he picked the wrong

23  employer.  And after that employment, look at what he's done.

24  Look at what he's done.  He's an essential employee, he's an

25  essential worker, he's a hero in this country.

10

PROCEEDINGS

1          THE COURT:  Who does he work for now?

2          MR. SCHWARTZ:  He works for his friend who is

3    sitting in the courtroom, Mandeep Singh, who owns -- they just

4    happen to have the same name, but he owns a trucking company.

5    And he works hard.  He drives that truck across the country.

6    He's entrusted and he's good at what he does.  And I'm going

7    to ask the Court to take judicial notice of the fact that

8    there is a shortage of truck drivers today.  It's well -- it's

9    in the news and we need more Mandeep Singhs to drive trucks

10   across this country.

11         THE COURT:  You mentioned the American dream.  What

12   effort did he make to regularize his status?  He's not legally

13   here in this country, correct?

14         MR. SCHWARTZ:  No.  Well, he -- certainly he was

15   applying for asylum and then as part of the agreement with the

16   government, we were going to pursue an S visa.  So since then

17   he's withdrawn his asylum application and, you know, we're

18   taking a leap of faith that he will get an S visa to stay

19   here, and we're hoping the Court supports that as well.  And

20   supports --

21         THE COURT:  What do you mean that I support it, in

22   terms of the sentence I impose or --

23         MR. SCHWARTZ:  Yes, yes.

24         THE COURT:  I mean, I don't have anything to do with

25   whether someone gets an S visa or not.

11

PROCEEDINGS

1              MR. SCHWARTZ:  No, I understand.  But, you know,

2    we're -- certainly we're going to be going through the process

3    over the next year.

4              The government, you know, Mr. Gibaldi, Mr. Campbell

5    they have given Mandeep Singh a second chance by allowing him

6    to be a witness in this case and I must say it was, you know,

7    as far as cooperation goes, it was really a perfect marriage

8    because, you know, the government, Mr. Gibaldi and

9    Mr. Campbell you take a leap of faith.  And they upheld it.

10   Everything that they told Mr. Singh they have upheld it.

11   Every portion of their bargain, but by the same token, your

12   Honor, Mr. Singh has upheld every piece of his bargain to the

13   government, every piece of the agreement and more.  He really

14   tried his best.

15             In fact, the only criticism was once, you know, my

16   client worked so hard as a truck driver that to make his

17   appointment he was up all night driving a truck and got here

18   and then got to their office, and then I remember Mr. Gibaldi

19   telling me, you know, he's doing good but, you know, you got

20   to tell him he can't work the day before he comes into the

21   office, he was a little tired today.  So that was the one

22   criticism during the entire cooperation that he was working

23   too hard.  And of course after that time he never again drove

24   a truck the day before he went to see the government.

25             He spent, you know, 30 hours or so in their office.

PROCEEDINGS

1    He went -- he came here voluntary.  He was a perfect gentleman

2    and the perfect witness, so they gave him a second chance.

3    I'm going to ask that this court give Mandeep Singh the same

4    second chance based on the person he is and based on his

5    substantial and meaningful assistance to the government as

6    articulated in both of our submissions and if anyone deserves

7    a second chance with no jail time, your Honor, it's Mandeep

8    Singh.

9            We're going to ask you to, you know, turn away from

10   the guidelines and take everything into account in this case

11   and give Mandeep Singh a non-jail disposition.

12           THE COURT:  What about his ability to pay a fine,

13   counsel?

14           MR. SCHWARTZ:  He will pay his fine.

15           THE COURT:  When?  I'm not talking about the

16   forfeiture.  I'm talking about in addition to the forfeiture,

17   a fine.

18           MR. SCHWARTZ:  Whatever --

19           THE COURT:  He has steady income, correct?

20           MR. SCHWARTZ:  He has an income.

21           THE COURT:  How does he intend to pay off the

22   forfeiture, that's $29,000.  It said it would be paid by

23   today, but I guess that hasn't happened, or has it?

24           MR. SCHWARTZ:  No, it has not happened.  Can I have

25   a moment?

13

PROCEEDINGS

1          THE COURT:  Sure.

2          (Pause in proceedings.)

3          MR. SCHWARTZ:  Judge, your Honor, can we have six

4    months to pay that?

5          THE COURT:  Well, it's the government who -- I'm

6    signing the forfeiture order, but it's the government's

7    agreement with him in connection with his forfeiture.

8          Is that acceptable to the government?

9          MR. CAMPBELL:  Your Honor, the ordinary course in

10   our recommendation would be the order is signed today, but we

11   will certainly work with defense counsel based on his ability

12   to pay to set up payments or something that is practical for

13   the defendant, but the order should be issued today.

14         THE COURT:  Okay.  But is it your position that he

15   could also, in addition to the forfeiture, pay a fine?

16   Because it's a separate financial penalty.

17         MR. SCHWARTZ:  Right, I mean if the Court imposes a

18   fine we're going to ask that the Court minimize the fine as

19   much as possible.  He doesn't have tremendous assets, but he

20   does make a living as a trucker.  He's able to pay his bills

21   and be a productive member of society.

22         THE COURT:  All right.  Before I hear from

23   Mr. Singh, does the government want to elaborate at all on

24   their submission?

25         MR. CAMPBELL:  Just briefly, your Honor.  We are

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

PROCEEDINGS

1    happy to largely rely on our submission.  We view money

2    laundering as a serious offense but as the defense explained,

3    the defendant pled guilty, he was forthright about his

4    conduct, and as our letter outlines the cooperation in this

5    case was extensive.  His testimony certainly contributed to

6    the conviction of his co-defendant and that's more fully

7    explained in our letter.

8           And the other thing that we believe was clear from

9    the trial testimony and consistent with the defendant's

10   proffers to us, was that he was a relatively minor participant

11   compared to his co-defendant, I believe that was borne out at

12   trial.

13          The only other thing the government would ask is

14   that forfeiture be orally pronounced and attached to the

15   judgment.  But unless your Honor has other questions, we're

16   happy to rely on our submission.

17          THE COURT:  Thank you.  Does the defendant wish to

18   speak before the Court imposes sentence?

19          MR. SCHWARTZ:  Yes, he does, your Honor.

20          THE COURT:  Okay.

21          THE DEFENDANT:  Your Honor, the American dream is

22   the belief that anyone can attain their own version of success

23   in a society in which upward mobility is possible for

24   everyone.

25          Jasminder Singh told me that he was going to make me

15

PROCEEDINGS

1    successful, and I foolishly believed him.  His charm, success

2    and verbal affirmations --

3              THE COURT:  Hypnotize.

4              THE DEFENDANT:  -- hypnotized me to the point where

5    I abandoned my religious virtues at the expense of becoming

6    rich.

7              I would like to humbly apologize for getting

8    involved in the money laundering conspiracy.  I take full

9    responsibility for my actions, and while this has been the

10   worse decision of my life, I have been making my best effort

11   to rewrite my wrongs by cooperating -- I've been making my

12   best effort to rewrite my wrongs but cooperating with the U.S.

13   Attorney's Office.

14             Your Honor, I'm asking for your leniency when

15   deciding my sentence.  I am a rehabilitated man, and I would

16   like to continue living out my American dream as a hard

17   working truck driver.  I apologize.

18             THE COURT:  All right.  Well, the first thing that I

19   mentioned earlier that the Court was required to do was to

20   determine the guideline range here.  This is obviously an

21   advisory guideline range and the bottom of the guideline range

22   is 18 months.

23             The government has filed a 5K letter, a motion which

24   requests that the Court depart from any guideline range based

25   on what they view is the important and extensive cooperation

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

16

PROCEEDINGS

1  of the defendant in this case.

2         Now, of course the Court has to take into account

3  the 3553(a) factors as well when determining an appropriate

4  sentence.  This was a serious fraud against American Express.

5  The mastermind of this fraud was Jasminder Singh.  It was

6  clear to this Court having presided over the trial that

7  Mandeep Singh was a much smaller cog in this scheme.

8         I found that his testimony was credible.  He

9  actually struck the Court as someone who was not particularly

10 sophisticated.  Nonetheless, he did admit to his own criminal

11 conduct.  He assisted Jasminder Singh in lying to American

12 Express about the fact that he hadn't received payments and he

13 assisted him in a substantial transfer or laundering of over

14 almost a half million dollars.  But as I said, I do believe

15 that his cooperation was genuine and important and justifies a

16 substantial departure from the guidelines.

17        I've considered the history and characteristics of

18 the defendant as well.  He has no prior criminal conduct.  He

19 has a child in India.  He now is employed as a trucker driver

20 and he's made efforts to continue working during the course of

21 these extensive proceedings.

22        So having considered principally his cooperation as

23 well as the 3553 factors, it's the sentence of this Court that

24 Mr. Singh will be placed on probation for a period of three

25 years.  I am going to make it a condition of that probation

PROCEEDINGS

1    that he do 40 hours of community service, that he provide full

2    financial disclosure to the Probation Department, that if he

3    is deported or excluded from the United States that he not

4    enter illegally.  I also think that a further financial

5    penalty is appropriate in this case and I'm persuaded that

6    Mr. Singh has the ability to pay a modest fine.  I'm going to

7    impose a fine of $3,000 to be paid in equal increments over

8    the three years of his probationary sentence.  And I will

9    impose, in addition, the mandatory 100-dollar special

10   assessment.  I also have signed the order of forfeiture and

11   the order of forfeiture will be appended to the judgment and

12   conviction order.

13           Is there anything that I've overlooked from the

14   government's perspective?

15           MR. CAMPBELL:  No, your Honor.

16           THE COURT:  Anything from the defense?

17           MR. SCHWARTZ:  No, your Honor.

18           THE COURT:  Mr. Singh, I don't know what the terms

19   of his specific terms of his cooperation agreement was, but if

20   you have not waived your right to appeal or if you think there

21   is some issue that you retain the right to appeal this

22   sentence, any Notice of Appeal of the Court's sentence today

23   has to be filed within 14 days.

24           Do you understand that?

25           MR. SCHWARTZ:  Can I have minute, a second, your

18

PROCEEDINGS

1   Honor, on that.

2               (Counsel and defendant confer.)

3               MR. CAMPBELL:  Just for the record paragraph 3 of

4   the agreement imposes an appeal waiver at or below 51 months.

5               THE COURT:  Okay.

6               THE COURTROOM DEPUTY:  Are there any open counts?

7               MR. SCHWARTZ:  Yes, your Honor, he understands.

8               THE COURT:  As the government just pointed out, his

9   cooperation agreement had a provision that if he were

10  sentenced to less than 51 months; is that correct --

11              MR. CAMPBELL:  Yes, your Honor.

12              THE COURT:  -- Mr. Campbell, but he was waiving his

13  right to appeal, of course there might be open issues that he

14  could appeal that are not covered by that waiver, that's why I

15  wanted to make sure he understands that.

16              And you are satisfied he does, counsel?

17              MR. SCHWARTZ:  Yes.

18              THE COURT:  And there are open counts?

19              MR. CAMPBELL:  Yes, your Honor, the government moves

20  to dismiss all of the open counts.

21              THE COURT:  Nothing further then?

22              MR. CAMPBELL:  No, your Honor.

23              THE COURT:  Thank you.

24              MR. SCHWARTZ:  Thank you, your Honor.

25              (Matter concluded.)

19

PROCEEDINGS

1                    *    *    *    *    *

2    I certify that the foregoing is a correct transcript from the

3    record of proceedings in the above-entitled matter.

4

5    s/ Georgette K. Betts              February 13, 2023

6    GEORGETTE K. BETTS                 DATE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*